**ORIGINAL**    RECEIVED AND FILED

1  **COMP**
DAN L. WULZ, ESQ.
2  *Nevada Bar No.: 5557*
**CLARK COUNTY LEGAL SERVICES**
3  **PROGRAM, INC.**
800 South Eighth Street
4  Las Vegas, Nevada 89101
Telephone: (702) 386-1070 x 106
5  Facsimile: (702) 386-1944
Attorneys for Plaintiff(s)

2002 SEP 24 PM 3: 19

LANCE S. WILSON
CLERK
BY_____ HZ
DEPUTY

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| DEBORAH RICHARDS, | |
| Plaintiff, | CV-S-02-1250-LRH-LRL |
| vs. | |
| DAVID G. NEW, d/b/a/ SO-LO AUTO, | |
| Defendant. | |

## COMPLAINT

Plaintiff, Deborah Richards, by and through counsel, Dan L. Wulz, Esq., Clark County Legal Services Program, Inc., for her Complaint against Defendant, alleges and states as follows:

### I. INTRODUCTION

1. This is an action brought by Plaintiff under the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* (hereafter "TILA"), for statutory damages, attorney fees, and costs. This is also an action by plaintiff for actual damages, statutory damages, plus attorney fees, prejudgment interest, and costs under state law based on Defendant having engaged in the tort of conversion, Defendant's failure to comply with Nevada statutes after default and

repossession, deceptive trade practices, and breach of contract.

## II. JURISDICTION AND VENUE

2. This action arises under the laws of the United States, 15 U.S.C. § 1601 *et seq.*, 28 U.S.C. §§ 1331 and 1337. Supplemental jurisdiction of the violations of state law exists under 28 U.S.C. § 1367. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) in that the claim arose in and the Defendant conducts business in this district.

## III. PARTIES

3. Plaintiff, Deborah Richards, is an individual who resides in Las Vegas, Nevada.

4. Defendant, David G. New d/b/a So-Lo Auto, is an individual who resides in Las Vegas, Nevada, and may be served with process by service of process at his business address of 6250 Mountain Vista, L-3-A, Henderson, Nevada.

5. All of the acts or failures to act alleged herein were duly performed by and are attributable to the Defendant acting by and through his agents and employees. Said acts and failures to act were within the scope of said agency and/or employment, and Defendant ratified said acts and omissions.

6. At all times relevant hereto, Defendant regularly extended or offered to extend consumer credit for which a finance charge is or may be required or which, by written agreement, is payable in more than four installments, and is the person to whom the transaction which is the subject of this action is initially payable, making Defendant a creditor within the meaning of the TILA, 15 U.S.C. § 1601 *et seq.* and Regulation Z, 12 C.F.R. Part 226.

## IV. FACTUAL ALLEGATIONS

7. On or about October 5, 2001, Plaintiff went to Defendant to purchase a motor vehicle for personal use.

8. On October 13, 2001, Defendant sold plaintiff a 1999 Geo Metro, VIN 2C1MR5229X6713805 (the "vehicle"), on credit and as evidenced by a written contract, for a

price of $5,500.00, plus sales tax of $398.75, for a total price stated in the contract of $5,898.75. Defendant subtracted Plaintiff's down payment of $800.00 and added $20.00 for a certificate of title, leaving the unpaid balance of $5,118.75. Defendant disclosed in the written contract that this would be paid in 28 installments of $220.00 each beginning November 5, 2001, that the finance charge was $1,221.61, that the annual percentage rate was 18%, and that the total of payments was $6,340.46. Defendant prepared and back dated the contract to October 5, 2001. Plaintiff will hereafter refer to this transaction as the October 13, 2001 transaction.

9. On October 13, 2001 Defendant told Plaintiff she would be required to pay the sales tax of $398.75 in cash over the next 30 days. Plaintiff paid $50.00 toward the sales tax that day.

10. Plaintiff in fact paid Defendant the sales tax of $398.75 in cash by October 30, 2001.

11. Plaintiff timely paid her November 5, 2001 monthly payment.

12. Plaintiff paid her December 5, 2001 payment late on or about December 17, 2001 but Defendant accepted it.

13. Plaintiff paid her January 5, 2001 payment late on or about January 28, 2001 but Defendant accepted it.

14. Plaintiff did not make her February 5, 2001 payment. Plaintiff stayed in contact with Defendant and in fact pointed out in a general way the TILA violation described below, i.e., Plaintiff pointed out that she had paid the sales tax in cash, yet that Defendant was charging her twice for this since the sales tax was also included in the amount financed. Plaintiff asked that Defendant forgive the February 5, 2001 payment and most of the March 5, 2001 payment to account for this duplicate charge. Defendant said he would check his figures and get back with her.

15. On or about February 27, 2001 Defendant faxed Plaintiff an accounting which attempted to account for his duplicate charge and misdisclosure. However, at the same

time, he claimed that Plaintiff was still one payment behind and that he expected her to pay it.

16. Plaintiff did not make her March 5, 2001 payment.

17. Defendant repossessed Plaintiff's vehicle on March 10, 2001.

18. On March 10, 2001 Defendant gave Plaintiff a note stating that she was two months late and "I will give you 10 days to come up with $3,963.87."

19. Defendant provided Plaintiff no further notices.

20. As a result, Plaintiff incurred actual damages, including loss of her car, loss of use of her car, and associated mental anguish.

## V. LEGAL THEORIES

### (COUNT I - Transaction of 10/13/01)

### A. (Violations of TILA)

21. Plaintiff incorporates by reference the allegations of paragraph nos. 1 through 20, above, as though here fully set forth.

22. The transaction of October 13, 2001 was a consumer credit transaction within the meaning of the TILA, 15 U.S.C. § 1602 and Regulation Z, 12 C.F.R. § 226.2.

23. In the written contract containing the TILA disclosures, Defendant disclosed an amount financed of $5,118.75, a finance charge of $1,221.61, an annual percentage rate of 18%, and 28 monthly payments of $220.00 each.

24. Defendant violated the TILA and Regulation Z.

25. On October 13, 2001 Defendant told Plaintiff she would be required to pay the sales tax of $398.75 in cash over the next 30 days. That day Plaintiff made a payment of $50.00 toward the sales tax.

26. Plaintiff in fact paid Defendant the sales tax of $398.75 in cash by October 30, 2001.

27. Nevertheless, in the written contract containing the TILA disclosures, Defendant included sales tax of $398.75 in the amount financed of $5,118.75.

28. As a result, Defendant inaccurately disclosed the amount financed of

1  $5,118.75, a finance charge of $1,221.61, and an annual percentage rate of 18%.

2  29. In truth, the amount financed was $4,720.00, the finance charge was $1,440.01, and the annual percentage rate was 23.248%.

4  30. Defendant failed in the written contract containing the TILA disclosures to accurately disclose an amount financed, a finance charge, and a annual percentage rate, all in violation of the TILA and Regulation Z. For example, the requirements of the TILA and Regulation Z have been violated in the following and other respects:

    a. The loan agreement fails to make required disclosures clearly and conspicuously in writing in violation of 15 U.S.C. § 1632(a) and Regulation Z, § 226.17(a);

    b. The loan agreement fails to accurately disclose the "amount financed," and a brief description such as "the amount of credit provided to you or on your behalf," in violation of 15 U.S.C. § 1638(a)(2) and Regulation Z, § 226.18(b);

    c. The loan agreement fails to accurately disclose the "finance charge," and a brief description such as "the dollar amount the credit will cost you," in violation of 15 U.S.C. § 1638(a)(3) and Regulation Z, § 226.18(d);

    d. The loan agreement fails to accurately disclose the annual percentage rate, and provide a brief description of the annual percentage rate such as "the cost of your credit as a yearly rate," in violation of 15 U.S.C. § 1638(a)(4) and Regulation Z, § 226.18(e);

    e. The loan agreement fails to provide a descriptive explanation of the "total of payments" such as "the amount you will have paid when you have made all scheduled payments," in violation of 15 U.S.C. § 1638(a)(5) and Regulation Z, § 226.18(h);

    f. The loan agreement fails to group the disclosures together, segregated from everything else, in violation of Regulation Z, § 226.17(a)(1);

    g. The loan agreement fails to make the terms "finance charge" and "annual percentage rate" more conspicuous than any other disclosure, in violation of 15 U.S.C. § 1632(a) and Regulation Z, § 226.17(a)(2);

    h. The loan agreement fails to provide a statement of the consumer's right to obtain, upon request, a written itemization of the amount financed, or fails to automatically disclose itemization of the amount financed, including amounts paid to other persons by the creditor on the consumer's behalf, with those persons identified, in violation of 15 U.S.C. § 1638(a)(2)(B) and Regulation Z, § 226.18(c).

31. As a result of these violations of the TILA, Defendant is liable for statutory damages in the amount of twice the finance charge ($1,440.01 x 2 = $2,880.02) in accordance with 15 U.S.C. § 1640(a)(2)(A)(i), as well as attorney fees and costs in accordance with 15 U.S.C. § 1640(a)(3).

### B. Violations of NRS Chapter 97

32. The form contract used by Defendant provides in part: "Title to said property shall not pass to Purchaser until all sums payable, and other amounts due or to become due, are fully paid." That provision is unlawful for the following reasons.

33. NRS 104.2401(1) provides in pertinent part: "Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest."

34. Defendant's own form contract provides that the buyer is giving the seller a security interest under the Uniform Commercial Code.

35. NRS 482.085 provides: "'Owner' means a person who holds the legal title of a vehicle and whose name appears on the certificate of ownership, and any lienholder whose name appears on the certificate of ownership. If a vehicle is the subject of an agreement for the conditional sale or lease thereof with or without the right of purchase upon performance of the conditions stated in the agreement and with an immediate right of possession vested in the conditional vendee or lessee, or if a mortgagor of a vehicle is entitled to possession, then the conditional vendee or lessee or mortgagor shall be deemed the owner for the purpose of this chapter."

36. The contract was in reality a retail installment transaction subject to NRS Chapter 97 and the regulations promulgated pursuant thereto. That law does not provide that Defendant may retain title until all sums payable are fully paid.

37. Further, under used vehicle sales law, NRS 482.424, Defendant is required to affix a temporary 30 day placard to the rear of the vehicle to allow it to be operated upon the roads, and only one temporary placard may be issued. Defendant did issue to Plaintiff a

temporary 30 day placard. Not later than 10 days before the temporary placard expires, Defendant must execute a Dealer's Report of Sale ("DRS") bearing the actual date of sale, and provide to the buyer the green copy of the DRS (which enables the buyer to register the car and obtain license plates). Defendant is required to submit to the Department of Motor Vehicles the original DRS and executed certificate of title within 30 days after execution of the DRS, and remit sales tax collected. The law simply does not contemplate nor provide for a dealer retaining title until all sums payable are fully paid. In fact, Defendant did issue Plaintiff a DRS.

38. Federal law, 49 U.S.C. § 32705(b), provides that the transferor must state the mileage in connection with transfer of ownership on the title, signed by the transferor and transferee. As there is only one signature line for the transferor and one signature line for the transferee on the title, disclosing mileage on the title with a signature transfers the title. This law too does not contemplate a dealer retaining title until all sums payable are fully paid. In fact, Defendant did transfer title and stated a date of sale on the title of October 30, 2001.

39. NRS 482.400(1) provides that upon transfer of the title to, or the interest of an owner in, a vehicle issued a certificate of ownership, the transferor and transferee shall write their signatures with pen and ink upon the certificate of ownership.

40. Further, Defendant intended that Plaintiff become owner of the car at the point of sale regardless of a contractual provision concerning title. A contract was made and signed. Defendant required Plaintiff to purchase insurance. Defendant eventually signed title to Plaintiff with a date of sale of October 30, 2001, and made mileage disclosure thereon. As agent of the Department of Motor Vehicles, Defendant gave Plaintiff a 30 day temporary placard permitting operation of the vehicle. (NRS 482.424).

41. Accordingly, by operation of law, Plaintiff was the owner of the vehicle and Defendant held a security interest.

42. The written contract used by Defendant does not conform with that required by NAC 97.110.

43. The written contract does not accurately state the amount financed and the

1  finance charge in violation of NRS 97.185.

2      44. These violations constituted an attempt by Defendant to double charge
3  Plaintiff for sales tax in the amount of $398.75, which caused Plaintiff to appear in default of
4  payment when she was not, leading to wrongful repossession of her car.

5      45. As a result, Plaintiff suffered damages through loss of her car, loss of use of
6  her car, and associated mental anguish.

7      46. Plaintiff is entitled to attorney fees under NRS § 18.010 if she does not
8  recover more than $20,000.00.

### (COUNT II - Transaction of 3/10/02)

10      47. Plaintiff incorporates by reference the allegations of paragraph nos. 1
11  through 46, above, as though here fully set forth.

### A. (Tort of Conversion)

13      48. As a result of the violations of NRS Chapter 97, Defendant was barred from
14  collecting any finance charge, official fees, or any charge for delinquency or collection pursuant
15  to NRS 97.305 (but Defendant may collect an amount equal to the cash price of the goods).
16  Accordingly, by operation of NRS 97.305, all Plaintiff ever lawfully owed Defendant was the
17  principal.

18      49. Defendant attempted to collect past finance charges, official fees, and
19  charges for delinquency, and accelerated the debt by demanding payment of $3,963.87 within
20  ten days of March 10, 2002.

21      50. As of March 5, 2002 the principal owed on the contract was $670.69.

22      51. As of March 5, 2002, Plaintiff had paid Defendant $1,858.75.

23      52. Because all Plaintiff ever lawfully owed Defendant was principal, and
24  because as of March 5, 2002, Plaintiff had paid Defendant more than that amount, on March 10,
25  2002 Plaintiff was not in default and had the right to lawful possession of her 1999 Geo Metro.

26      53. On the date of repossession, and thereafter to date, Defendant exercised
27  dominion and control over Plaintiff's 1999 Geo Metro by intentionally and unlawfully

possessing and selling it.

54. Despite demand, Defendant refused to return said 1999 Geo Metro or its value. Defendant's acts amount to a serious and substantial interference with Plaintiff's property and constitute a tortious conversion as a matter of law.

55. As a result of the tortious conversion, Plaintiff has suffered and continues to suffer actual damages through loss of her car, loss of use of her car, and associated mental anguish.

56. Defendant engaged in the intentional conversion stated above with the intent to deprive Plaintiff of her rights or property. Further, Defendant knew of the probable harmful consequences of the wrongful acts and engaged in a willful and deliberate failure to act to avoid those consequences.

57. Defendant acted with malice, express or implied, in that Defendant's conduct was willful, intentional and done in reckless disregard of its possible results. Further, NRS § 47.240(1) provides a conclusive presumption of a malicious and guilty intent from the deliberate commission of an unlawful act, for the purpose of injuring another.

58. Also, Defendant acted with oppression in that Defendant engaged in despicable conduct that subjected Plaintiff to cruel and unjust hardship with conscious disregard of the rights of Plaintiff.

59. Plaintiff is entitled to punitive damages in an amount sufficient to punish Defendant and to deter others from like conduct.

60. Plaintiff is entitled to attorney fees under NRS § 18.010 if she does not recover more than $20,000.00.

### B. Violation of State UCC Statutes

61. NRS 104.1203 imposes the obligation of good faith in the performance of every contract or duty within Chapter 104. NRS 104.9102(qq) provides that "good faith" means honesty in fact and the observance of reasonable commercial standards of fair dealing. Defendant failed and refused to act honestly and to observe reasonable commercial standards of

fair dealing.

62. NRS 104.9611(2) requires a secured party to send a debtor a notification before disposition of collateral.

63. NRS 104.9614(1)(a) requires that notification to the debtor must contain the information required in NRS 104.9613(1) which requires the following:

    (a)    Description of the debtor and secured party;

    (b)    Description of the collateral that is the subject of the intended disposition;

    (c)    The method of intended disposition;

    (d)    Statement that the debtor is entitled to an accounting of the unpaid indebtedness and the charge, if any, for the accounting; and

    (e)    The time and place of a public disposition or the time after which any other disposition is to be made.

64. Defendant never provided any such notification to Plaintiff.

65. Additionally, the law provides that the debtor has the right to redeem the collateral at any time before the sale is consummated. NRS 104.9623(3)(b). *See also*: the safe harbor notice form contained in NRS 104.9614(3), stating: "You can get the property back at any time before we sell it . . . ."

66. Defendant never gave notice to Plaintiff of her right to redeem.

67. NRS 104.9610 requires that every aspect of disposition of collateral be commercially reasonable. Notice violations alone render a disposition commercially unreasonable.

68. For a commercially unreasonable disposition, Plaintiff is entitled to double her actual damages under NRS 482.5163(3).

69. Defendant never accounted to Plaintiff for any surplus or deficiency in violation of NRS 104.9616(1)(a) and (b).

70. As a result, Plaintiff suffered actual damages. NRS 104.9625(2) provides that a person is liable for "any loss caused by failure to comply with this article."

71. Additionally, NRS 104.9625(3)(b) provides that a debtor has a right to recover as statutory damages "in any event an amount not less than the credit service charge plus 10 percent of the principal amount of the obligation." Here, the true finance charge was $1,440.01. The true principal was $4,720.00. Statutory damages compute to $1,912.01.

72. Plaintiff is entitled to attorney fees under NRS § 18.010 if she does not recover more than $20,000.00.

### C. Deceptive Trade Practices

73 Defendant committed a deceptive trade practice in violation of NRS 598.0923(3) by engaging in conduct in violation of state or federal law in each particular described above.

74. As a result, Plaintiff suffered statutory damages and actual damages, including loss of her car, loss of use of her car, and associated mental anguish.

75. Plaintiff is entitled to attorney fees pursuant to NRS 41.600(3).

### D. Breach of Contract

76. Defendant breached the contract with Plaintiff by repossessing the subject vehicle when Plaintiff was not in default under the terms of the contract and the law.

77. As a direct and proximate result of Defendant's breach of contract, Plaintiff incurred actual damages in the amount of $1,858.75, plus incidental and consequential damages, including but not limited to loss of use of her car, in an amount to be determined.

78. Plaintiff is entitled to attorney fees under NRS § 18.010 if she does not recover more than $20,000.00.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

(a) TILA statutory damages of $2,880.02;

(b) actual damages in excess of Ten Thousand Dollars;

(c) double actual damages pursuant to NRS 482.5163(3);

(d) punitive damages in an amount sufficient to punish Defendant and to deter others from like conduct;

(e) statutory damages of not less than $1,912.01 pursuant to NRS 104.9625(3)(b);

(f) prejudgment interest;

(g) attorney fees and costs; and

(h) such other and further relief as the court deems just and equitable.

DATED this 23 day of September, 2002.

                          **CLARK COUNTY LEGAL SERVICES PROGRAM, INC.**

                          By _____
                             DAN L. WULZ, ESQ.
                             *Nevada Bar No. 5557*
                             800 S. 8th Street
                             Las Vegas, Nevada 89101
                             Telephone: 386-1070, Ext. 106
                             Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a Trial by Jury.

DATED this 23 day of September, 2002.

                          **CLARK COUNTY LEGAL SERVICES PROGRAM, INC.**

                          By _____
                             DAN L. WULZ, ESQ.
                             *Nevada Bar No. 5557*
                             800 S. 8th Street
                             Las Vegas, Nevada 89101
                             Telephone: 386-1070, Ext. 106
                             Attorneys for Plaintiff

S:\Hand\DLW\CASES\ANDREWS\Pleadings\complaint.wpd